**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**



FILED
CLERK, U.S. DISTRICT COURT

JUL 2, 2019

CENTRAL DISTRICT OF CALIFORNIA
BY: ____BH____ DEPUTY

Levon Ketsoyan, et al.,

        Plaintiffs,

        v.

U.S. Department of Justice, et al.,

        Defendants.

2:19-cv-01198 VAP (AGRx)

**Order GRANTING Defendants' Motion to Dismiss and TRANSFERRING Ms. Westbrook's Claims (Doc. No. 20)**

Before the Court is a Motion to Dismiss, (Doc. No. 20), filed by Defendants William Barr, Robert M Culley, Thomas P. Giles, Thomas D. Homan, David A. Marin, U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security, U.S. Department of Justice, U.S. Immigration and Customs Enforcement ("Defendants").  Plaintiffs Levon Ketsoyan and Elena Westbrook ("Plaintiffs") oppose the Motion.  (Doc. No. 22.)

After considering all papers filed in support of and in opposition to the Motion, and the arguments advanced at the June 6, 2019 hearing, the Court GRANTS Defendants' Motion.

United States District Court
Central District of California

# I.  SUMMARY OF ALLEGATIONS

Plaintiffs bring this putative class action to "challenge the government's practice of subjecting noncitizens to arrest, detention, and removal" during their attempt to establish eligibility under the Immigration and Nationality Act ("INA") while following "the government's own regulations for obtaining lawful immigration status based on qualifying relationships to U.S. citizens."  (FAC ¶ 1.)

Plaintiff Levon Ketsoyan, fleeing persecution in the former U.S.S.R., lawfully entered the United States and married a United States citizen in 2001.  (*Id.* ¶ 68, 70.)  He and his wife had a daughter, born in the United States, in 2007.  (*Id.* ¶ 70.)  In 2001, the INS initiated removal proceedings against Mr. Ketsoyan pursuant to a fraud conviction, directed his deportation to Armenia, and placed him on supervision pursuant to § 1231 of the INA ("§ 1231 supervision").  (*Id.* 72-74.)  Mr. Ketsoyan challenged his removal order in 2012, but the immigration judge denied his motion; the Board of Immigration Appeals upheld the denial in 2013.  (*Id.* 75-77.)  Mr. Ketsoyan filed a petition for Ninth Circuit review, but dismissed it in exchange for being placed on a new order of § 1231 supervision.  (*Id.* 78-79.)  His wife then filed a Form I-130, or Family Relative Petition, but it has yet to be adjudicated.  (*Id.* 80.)  Mr. Ketsoyan has been given a "final" reporting date of July 31, 2019 to check in with Immigration and Customs Enforcement, ("ICE"), at which time he fears he will be arrested before he can reopen his removal proceedings.  (*Id.* 81-82.)

United States District Court
Central District of California

Plaintiff Elena Westbrook, a United States citizen living in Nevada, filed a Form I-130 in 2017 for her husband, Yanko Lukov, who was subject to a final order of removal.  (*Id.* 14, 96-98.)  On February 14, 2019, she appeared with her husband and their daughter (also a United States citizen) for an I-130 interview.  (*Id.* 97, 100).  There, Mr. Lukov was taken into custody by ICE—per their "standard and uniform practice" of timing such arrests to coincide with I-130 interviews—notwithstanding the fact that the I-130 petition was recommended for approval that very day.  (*Id.* 100, 103.)  The ICE agents told the family and their counsel that they did not need a warrant for Mr. Lukov's arrest, and they "did not care what the statute says."  (*Id.* 102.)  Mr. Lukov has since been deported to Bulgaria.  (Doc. No. 18.)

Plaintiffs now bring claims for violations of: 1) § 1231 of the INA and applicable regulations for detention of noncitizens with a final order of removal; 2) procedural due process regarding arrest and revocation of orders of supervision; 3) the INA and applicable regulations for detention of noncitizens with pending Forms I-130; 4) the INA and applicable regulations for potential deportation to countries where noncitizens may face torture; 5) procedural due process regarding potential deportation to countries where noncitizens may face torture; 6) procedural due process regarding detention where removal is not likely in the foreseeable future; 7) procedural due process regarding detention without and individualized hearing on danger and flight risk; 8) procedural due process regarding adjudication of applications for relief and benefits under immigration laws; 9) the Administrative Procedure Act ("APA") through arbitrarily depriving noncitizens of the ability to pursue provisional waivers; 10) the APA through

revoking § 1231 releases without notice or a hearing; and 11) the APA for refusal to consider 212(h) waiver applications.

Plaintiffs wish to bring the suit as a class action seeking 1) that the Court assume jurisdiction over the matter; 2) an injunction ordering Defendants not to revoke § 1231 supervision without a finding that the supervisee has violated the conditions of his release; 3) an injunction ordering Defendants not to revoke § 1231 supervision simply because there is an outstanding order of removal while an individual is pursuing reopened immigration proceedings; 4) an injunction ordering Defendant not to remove Plaintiffs and all putative class members to their countries of origin without first providing them a mechanism to establish that they would suffer persecution or torture that they are entitled to protection from; and 5) costs and attorneys' fees.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject matter jurisdiction.  Although courts usually accept the plaintiff's allegations as true on a motion to dismiss, "[w]hen the defendant raises a factual attack" on plaintiff's jurisdictional allegations under Rule 12(b)(1), "the plaintiff must support her jurisdictional allegations with 'competent proof,' under the same evidentiary standard that governs in the summary judgment context."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010)).  In such a case, the district court "need not presume the truthfulness of the plaintiff's allegations," and "may review evidence beyond

the complaint without converting the motion to dismiss into a motion for summary judgment."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  The plaintiff must prove by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met.  *Leite*, 749 F.3d at 1121.

Federal Rule of Civil Procedure 12(b)(6) provides that a claim may be dismissed for "failure to state a claim upon which relief can be granted."  To survive a motion to dismiss, a plaintiff must allege facts that state a claim for relief that is plausible, not merely conceivable.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007).  "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Then, for all well-pled factual allegations, the court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*  "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (applying *Iqbal*'s two-step analysis).  "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

A motion to dismiss can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

## III.    DISCUSSION

The Court finds that 8 U.S.C. § 1252 strips its jurisdiction to hear Mr. Ketsoyan's immigration claims, and that Mr. Ketsoyan is not entitled to habeas relief for any alleged due process violations.  As the Court lacks jurisdiction to hear Mr. Ketsoyan's claims, the Central District of California is not the proper venue for Ms. Westbrook's claims.  Accordingly, Defendants' Motion is GRANTED.

### A.   This Court Lacks Jurisdiction to Adjudicate Mr. Ketsoyan's Claims

As § 1252 bars Mr. Ketsoyan's immigration claims, and as the Court finds habeas relief to be unavailable, the Court lacks jurisdiction to adjudicate Mr. Ketsoyan's claims.

### 1.   Subject Matter Jurisdiction Pursuant to 8 U.S.C. § 1252

Mr. Ketsoyan seeks injunctions preventing Defendants from revoking his § 1231 supervision due to his removal order, and from removing him to Armenia.  (Doc. No. 7 at 54.)  These requests stem from his pending removal order, judicial review of which governed by 8 U.S.C. § 1252, requiring "a petition for review filed with an appropriate court of appeals," ("PFR"), which is to "be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter." 8 U.S.C. § 1252(a)(5).  Defendants argue that this and two other sections of

United States District Court
Central District of California

§ 1252, (g) and (b)(9), serve to divest the Court of jurisdiction to hear such claims.  (Doc. No. 20 at 24-30.)  Section 1252(g) mandates that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  Similarly, under § 1252(b)(9), "judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section."

The Ninth Circuit has held that this language requires "that any issue—whether legal or factual—arising from any removal-related activity can be reviewed only through the PFR process," *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016), and has gone so far as to characterize § 1252(b)(9) as  "'breathtaking' in scope and 'vise-like' in grip," noting that it "therefore swallows up virtually all claims that are tied to removal proceedings," *id.* (citing *Aguilar v. ICE*, 510 F.3d 1, 9 (1st Cir. 2007)).  Defendants contend that the Court is accordingly without jurisdiction to adjudicate Plaintiffs' claims.  This argument is buttressed by the nature of Mr. Ketsoyan's requests: that the Court prevent Defendants from revoking his supervision and removing him to Armenia.[1]  "When a claim by an alien,

---

[1] The Ninth Circuit has found that "the distinction between an independent claim and indirect challenge 'will turn on the substance of the relief that a plaintiff is seeking.'"  *Martinez v. Napolitano*, 704 F.3d 620, 622 (9th Cir. 2012) (citing *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011)).

United States District Court
Central District of California

however it is framed, challenges the procedure and substance of an agency determination that is 'inextricably linked' to the order of removal, it is prohibited by section 1252(a)(5)."  *Martinez v. Napolitano*, 704 F.3d 620, 623 (9th Cir. 2012).  Courts in the Central District frequently have found a lack of jurisdiction to interfere with the execution of a final order of removal.  *See e.g. Flores v. Johnson*, No. CV 15-7167 AG (JPRx), 2015 WL 12656240, at *2 (C.D. Cal. Sept. 30, 2015) (finding that the court lacked jurisdiction because the petitioner's "request to halt the execution of a final removal order" arose from an action or proceeding "brought in connection with Petitioner's removal (8 U.S.C. § 1252(b)(9)), or from 'the decision or action' to 'execute removal orders against' Petitioner (8 U.S.C. § 1252(g))); *Lopez v. Department of Homeland Security*, No. CV 10-7929 AG (JCx), 2010 WL 4279314, at *2 (C.D. Cal. Oct. 21, 2010) (same).

Plaintiffs argue that these cases are inapposite, as they predate two recent Supreme Court decisions, *Jennings v. Rodrigues*, 138 S. Ct. 830 (2018), and *Nielsen v. Preap*, 139 S. Ct. 954 (2019), addressing the jurisdictional bar of § 1252.  (Doc. No. 22 at 9-12.)  These cases were decided in the context of challenges to inadequate bond hearings, and did not supersede all previous caselaw governing removal orders.  In *Jennings*, the Court found jurisdiction precisely because the petitioners "are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined."  *Jennings*, 138 S. Ct. at 841.  *Nielsen* echoed this language.

8

*Nielsen*, 139 S. Ct. at 961.  Here, Plaintiffs *are* challenging potential detention pursuant to removal; there is accordingly no jurisdiction.

Plaintiffs also contend that § 1252(g) fails to strip the Court's jurisdiction to consider the broader legality of Defendants' actions, citing *Arce v. United States*, 899 F.3d 796 (9th Cir. 2018).  The difference between Mr. Ketsoyan's circumstances and those the court confronted in *Arce* are illustrative, however.  In *Arce*, a plaintiff brought FTCA claims after the Department of Homeland Security deported him in direct violation of a stay of removal issued by the Ninth Circuit.  *Arce*, 899 F.3d 796.  The court noted that the case did not arise from execution of a removal order because the stay rendered the order unenforceable, and § 1252(g) accordingly did not bar the plaintiff from bringing his claims.  *Id.* at 801.  Here, Mr. Ketsoyan's removal order is still in effect, and he seeks to enjoin Defendants from enforcing it.  Plaintiffs argue that Defendants "surely cannot arrest and detain those already released on orders of supervision under section 1231 in violations of the specific provisions of the INA and obviously not by disregarding the Constitution."  (Doc. No. 22 at 14.)  Defendants undoubtedly may not arrest Mr. Ketsoyan in violation of the INA and the Constitution, yet Plaintiffs elide the nontrivial point that Defendants have not done so.  Mr. Ketsoyan's fears that this may take place in the future are insufficient to overcome the jurisdictional bar of § 1252(g).

Accordingly, the Court finds that § 1252 strips the Court of jurisdiction over Plaintiffs' immigration claims.

**2.   Mr. Ketsoyan is Not Entitled to Habeas Relief**

Notwithstanding the jurisdictional restrictions of § 1252, the Ninth Circuit has found that a "habeas challenge to detention [with] a basis independent of the merits of the petition for review," such as due process violations, can be reviewed by a district court.  *Singh v. Holder*, 638 F.3d 1196, 1211 (9th Cir. 2011); *see also J.E.F.M.*, 837 F.3d at 1032 ("claims that are independent of or collateral to the removal process do not fall within the scope of § 1252(b)(9)").

Defendants mistakenly contend that Mr. Ketsoyan is ineligible for habeas relief as he is not being detained.  (Doc. No. 20 at 27.)  Courts repeatedly have found that habeas petitioners need not be held in physical custody, *see e.g. Nakaranurack v. United States*, 68 F.3d 290, 293 (9th Cir. 1995) ("We have broadly construed 'in custody' to apply to situations in which an alien is not suffering any actual physical detention; i.e., so long as he is subject to a final order of deportation, an alien is deemed to be 'in custody' for purposes of the INA, and therefore may petition a district court for habeas review of that deportation order.").  Mr. Ketsoyan therefore is in custody for the purposes of a habeas petition.

Defendants also argue that the habeas relief Mr. Ketsoyan seeks is unavailable, as a habeas petitioner may not request "a stay of removal while he pursues various forms of immigration relief."  (Doc. No. 20 at 27.)  This argument is belied by Central District grants of habeas relief on precisely those grounds.  *See Villanueva-Bustillos v. Marin*, 370 F. Supp. 3d 1083 (C.D. Cal. 2018) (enjoining deportation of habeas petitioner until immigration

judge's denial of motion to reopen removal proceedings could be reviewed by Ninth Circuit); *Chhoeun v. Marin*, 306 F. Supp. 3d 1147, 1151 (C.D. Cal. 2018) (granting preliminary injunction staying deportation so that habeas petitioners could file motions to reopen immigration proceedings).

There are key distinctions between Mr. Ketsoyan's case and those cited above, however.  Although physical detention is not required for habeas relief, it is notable that the petitioners in *Villanueva-Bustillos* and *Chhoeun* were apprehended and held by Immigration and Customs Enforcement for the purposes of imminent deportation.  *Villanueva-Bustillos*, 370 F. Supp. 3d at 1085; *Chhoeun*, 306 F. Supp. at 1150.  Here, there is no indication of Mr. Ketsoyan's imminent detention and removal, other than the ambiguously-pled "warnings given by the deportation officer at the 31 July 2018 check-in appointment" and the alleged "uniform practice of Defendants in the last six months," which are otherwise unexplained.  (FAC ¶ 82.) Defendants, on the other hand, submit the declaration of an ICE Deportation Officer averring that DHS cannot obtain the requisite travel documents to remove Mr. Ketsoyan to Armenia, and that "DHS has to plans to detain or remove" him.  (Doc. No. 20-3 at 2.)

Furthermore, the petitioners in the habeas cases cited above requested that their deportations be enjoined so that they might reopen their immigration proceedings.  Here, although the FAC alleges that "Mr. Ketsoyan fears that he will be arrested and detained by Defendants at his 31 July 2019 check-in in order to prevent him from seeking to reopen his removal proceedings," (FAC ¶ 82), Plaintiffs' Opposition notes that "Mr.

11

Ketsoyan, however, has already exhausted his one motion to reopen," and that "any successive motion to reopen…will be denied as time and numerically barred."[2]  (Doc. No. 22 at 17.)  It is thus unclear whether Mr. Ketsoyan plans to file a motion to reopen his immigration proceeding, the form of habeas relief that courts in the Central District have found is warranted for petitioners facing deportation.

Accordingly, as it is unclear that ICE plans to detain and remove Mr. Ketsoyan, and Mr. Ketsoyan does not aver that he is seeking to file a motion to reopen his immigration proceedings, habeas relief is inappropriate.

### B.  This Venue is Improper for Ms. Westbrook's Claims

Lawsuits brought against United States government agencies, officers, or employees acting in an official capacity may "be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action."  28 U.S.C. § 1391(e).  Defendants argue, and Plaintiffs do not dispute, that no named Defendant for any of Ms. Westbrook's claims resides in the Central District of California, no substantial part of the events giving rise to her

---

[2] "The Board of Immigration Appeals has found that there are no limitations as to the number of motions to reopen that may be filed for petitioners seeking reopening to apply for asylum and withholding based on changed country conditions, and that such petitions are not subject to time limits." *Villanueva-Bustillos*, 370 F. Supp. 3d at 1089.

12

claims occurred in this district, and Ms. Westbrook is a resident of Nevada. (Doc. Nos. 20, 22.)

Notwithstanding these undisputed arguments, Plaintiffs assert proper venue in this Court, (Doc. No. 22 at 5-6), citing *Exxon Corp. v. Federal Trade Commission*, 588 F.2d 895, 898 (3d Cir. 1978), in which the court held that "requiring every plaintiff in an action against the federal government or an agent thereof to independently meet section 1391(e)'s standards would result in an unnecessary multiplicity of litigation."  The *Exxon* court also found, however, that parties could not circumvent venue requirements by pleading unsupported claims of resident parties "as a basis for providing themselves with proper venue," *id.* at 899, which the Ninth Circuit has cited with approval, *Railway Labor Executives' Association v. I.C.C.*, 958 F.2d 252, 256 (9th Cir. 1991).  As the Court has dismissed the claims of the other named Plaintiff, this is not the proper venue for Ms. Westbrook's claims, and there is accordingly no need to need to address the parties' arguments regarding standing.

At the June 6, 2019 hearing on the Motion, Ms. Westbrook requested that the Court transfer Ms. Westbrook's claims to the District of Nevada if Defendants' Motion was granted.  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  Accordingly, the Court SEVERS Ms. Westbrook's claims and ORDERS that they be transferred to the District of Nevada for adjudication.

# IV.    CONCLUSION

The Court therefore GRANTS Defendants' Motion WITHOUT
PREJUDICE.  Plaintiffs must file their Second Amended Complaint by no
later than 4:00 P.M. on July 19, 2019.


**IT IS SO ORDERED.**


Dated:    7/2/19

Virginia A. Phillips
Chief United States District Judge

United States District Court
Central District of California

14